**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| CHAMBERS OF<br>TIMOTHY J. SULLIVAN<br>UNITED STATES MAGISTRATE JUDGE | 6500 Cherrywood Lane<br>Greenbelt, Maryland 20770<br>Telephone: (301) 344-3593 |

March 24, 2022

LETTER TO COUNSEL:

      RE:   *Tamera L.-H. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
                Civil No. TJS-21-883

Dear Counsel:

      On April 7, 2021, Plaintiff Tamera L.-H. petitioned this Court to review the Social Security Administration's final decision to deny her claim for supplemental security income ("SSI"). ECF No. 1. The parties have filed cross-motions for summary judgment. ECF Nos. 15 & 16. These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Acting Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

      Tamera L.-H. protectively filed applications for disability insurance benefits ("DIB") and SSI on February 15, 2019, alleging a disability onset date of January 1, 2010. Tr. 15. Her applications were denied initially and upon reconsideration. *Id.* Tamera L.-H. requested an administrative hearing, and a telephonic hearing was held on October 7, 2020, before an Administrative Law Judge ("ALJ"). Tr. 33-65. At the hearing, Tamera L.-H. amended her alleged onset date of disability to February 15, 2019, and requested that her claim for DIB be dismissed. Tr. 15, 46-47. In a written decision dated November 10, 2020, the ALJ found that Tamera L.-H. was not disabled under the Social Security Act. Tr. 12-32. The Appeals Council denied Tamera L.-H.'s request for review, making the ALJ's decision the final, reviewable decision of the agency. Tr. 1-6.

      The ALJ evaluated Tamera L.-H.'s claims for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. At step one, the ALJ found that Tamera L.-H. had not engaged in substantial gainful activity since February 15, 2019, the alleged onset date. Tr. 17. At step two, the ALJ found that Tamera L.-H. suffered from the following severe impairments: generalized anxiety disorder, posttraumatic stress disorder, bipolar

---

[1] This case was originally assigned to Judge Boardman. On June 30, 2021, it was reassigned to Judge Coulson. On February 17, 2022, it was reassigned to Judge Hurson. On February 28, 2022, it was reassigned to me.

disorder without psychotic features, alcohol abuse and intoxication, mood disorder, depression, attention deficit hyperactivity disorder, and lumbar spine degenerative disc disease. Tr. 17-18. At step three, the ALJ found that Tamera L.-H.'s impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). Tr. 18-19. The ALJ determined that Tamera L.-H. retained the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for a total of 8 hours in an 8-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders, ropes and scaffolds. She is limited to performing simple 1-2 step, routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers, supervisors and the general public, and which would not require a fast pace or production quotas such as would customarily be found on an assembly line.

Tr. 19.

At step four, the ALJ determined that Tamera L.-H. was unable to perform past relevant work. Tr. 25. At step five, relying on testimony provided by a vocational expert ("VE"), and considering the claimant's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Tamera L.-H. can perform, including housekeeper, packer, and machine tender. Tr. 25-26. Accordingly, the ALJ found that Tamera L.-H. was not disabled under the Social Security Act. Tr. 26-27.

Tamera L.-H. argues that this case must be remanded for further proceedings because (1) the ALJ did not properly evaluate her mental impairments; (2) the ALJ erroneously relied on the VE's testimony; (3) the ALJ did not explain how, despite her moderate limitation in concentrating, persisting, or maintaining pace ("CPP"), she would be able to remain on task for more than 80% of an eight-hour workday; and (4) the ALJ did not explain the basis for finding that she could work at an assembly-line pace and did not define the terms "fast pace" or "production quotas." ECF No. 15-1 at 3-20. For the reasons discussed below, however, these arguments are unavailing.

First, Tamera L.-H. contends that the ALJ did not evaluate properly her mental impairments under the "special technique" outlined in 20 C.F.R. §§ 404.1520a and 416.920a. ECF No. 15-1 at 3-9. When ALJs evaluate the severity of a claimant's mental impairment, they "must follow a special technique." 20 C.F.R. §§ 404.1520a, 416.920a; *see Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 661 (4th Cir. 2017) ("The special-technique regulation's plain language describes what the SSA *must* do."). "The special-technique regulation affects how an ALJ evaluates and documents his process at steps 1 through 4 if the claimant alleges a *mental* impairment." *Patterson*, 846 F.3d at 659; *see Willis L. v. Kijakazi*, Civil No. TJS-21-102, 2022 WL 669369, at *2 (D. Md. Mar. 7, 2022) (outlining technique found in §§ 404.1520a and 416.920a). The "failure to properly document application of the special technique will rarely, if

2

ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review." *Patterson*, 846 F.3d at 662.

Here, the ALJ found that the severity of Tamera L.-H.'s mental impairments did not meet or medically equal the criteria of Listings 12.04, 12.06, and 12.15 because under the "paragraph B" criteria she had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself (Tr. 18-19). *See* 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ explained that Tamera L.-H. testified that she watched movies with a few friends and wrote song lyrics. Tr. 18. She "reported that she helped care for a dog, did laundry, prepared simple meals, cleaned, shopped in stores and by mail, had no problems managing money, socialized with a small group, read, watched television, was able to get along with authority figures, and played games on her phone." Tr. 18-19. "Additionally, medical records indicate that [Tamera L.-H.] rehearsed music and had a paying music contract and gigs during the period in question." Tr. 19. Psychiatric records also showed that Tamera L.-H. "displayed good eye contact, normal conversational skills, stable emotional reactions, a euthymic mood, a broad affect, good language comprehension, normal speech, clear and goal-oriented thought processes, no auditory or visual hallucinations, good fund of knowledge, intact judgment, average intelligence, full orientation, and intact memory." *Id.*

An ALJ's "evaluation of a plaintiff's mental impairment warrants remand when the ALJ's decision does not explain how they weighed all relevant evidence, fails to rate the plaintiff's four areas of functional limitation, and lacks an explanation of how the ALJ reached their conclusions about the severity of the mental impairment." *Edward J. v. Comm'r, Soc. Sec. Admin.*, Civil Action No. ADC-20-0745, 2021 WL 1224098, at *6 (D. Md. Apr. 1, 2021) (citing *Patterson*, 846 F.3d at 662-63). "Here, the ALJ's decision contains all three of these criteria." *Id.* Thus, "[c]ontrary to [Tamera L.-H.'s] argument, the ALJ's opinion contains sufficient analysis to allow [the Court] to review the basis for [the ALJ's] findings." *Love v. Comm'r, Soc. Sec. Admin.*, Civil No. PWG-17-681, 2017 WL 6368620, at *2 (D. Md. Dec. 13, 2017) (Gallagher, J.), *report and recommendation adopted*, 2018 WL 3458715 (D. Md. Jan. 5, 2018). The ALJ "properly considered and discussed [Tamera L.-H.'s] mental impairments in accordance with the 'special technique'" set forth in §§ 404.1520a and 416.920a. *Id.* at *3. Tamera L.-H.'s argument on this point is thus without merit. *See Gloria M. v. Saul*, Civil No. TMD 19-2154, 2020 WL 3402299, at *5 (D. Md. June 19, 2020); *cf. Josiah T. v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-20-3572, 2022 WL 684944, at *3 (D. Md. Mar. 8, 2022) (Gallagher, J.) (concluding that, in determining that claimant did not have a severe mental impairment, ALJ's failure to complete special technique was harmless error because, *inter alia*, state agency psychologist found that claimant had non-severe mental impairments, with mild to no limitations in the four functional areas).

Second, Tamera L.-H. contends that the ALJ failed to explain the ALJ's determination that she could work up to an assembly-line pace. ECF No. 15-1 at 18. This limitation, however, accounts for Tamera L.-H.'s moderate limitation in CPP. *See Robert H. v. Kijakazi*, Civil No. TJS-20-2670, 2021 WL 6135564, at *2 (D. Md. Dec. 29, 2021) (determining that RFC assessment limiting claimant to work that, *inter alia*, "would not require a fast pace or production quotas such as would customarily be found on an assembly line" accounted for claimant's limitations in concentration, persistence, and pace). She then argues that the ALJ failed to explain the terms "fast pace" or "production quotas." ECF No. 15-1 at 20. Contrary to Tamera L.-H.'s argument, the Court

3

"finds that the ALJ defined 'fast pace or production quotas' when [the ALJ] stated, 'such as would customarily be found . . . on an assembly line.'" *Berrett v. Saul*, No. 1:19-cv-00801 (TSE/IDD), 2020 WL 4589733, at \*5 (E.D. Va. July 23, 2020), *report and recommendation adopted*, No. 1:19CV00801, 2020 WL 4589035 (E.D. Va. Aug. 10, 2020); *see Kenneth L. v. Kijakazi*, Civil No. SAG-20-624, 2021 WL 4198408, at \*2 (D. Md. Sept. 15, 2021) (Gallagher, J.) (determining that "'no strict production quotas' contains terms that are subject to common understanding," as "[t]he term in this case plainly relates to the rigidity of the occupations' production requirements— whatever those requirements may be"). Remand is thus not warranted for these reasons as well.

Third, Tamera L.-H. maintains that the ALJ failed to explain how, despite her moderate limitation in CPP, she would be productive or remain on task for more than 80% of an eight-hour workday. ECF No. 15-1 at 16-18. The VE testified that, "when an individual is off task 20% of the workday or greater, they are not employable." Tr. 50. The ALJ, however, did not ultimately include such a limitation in Tamera L.-H.'s RFC. "Indeed, the 'ALJ is not required to accept the vocational expert's opinion for a hypothetical based on limitations that the ALJ did not include in the [residual functional capacity].'" *Brian S. v. Saul*, No. 3:20CV065 (JAG), 2021 WL 748087, at \*13 (E.D. Va. Feb. 10, 2021) (alteration in original) (quoting *Prim v. Colvin*, No. 7:14CV00135, 2015 WL 4757104, at \*4 (W.D. Va. Aug. 11, 2015)), *report and recommendation adopted*, No. 3:20CV65, 2021 WL 744149 (E.D. Va. Feb. 25, 2021); *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Instead, the ALJ found that Tamera L.-H. could perform work that "would not require a fast pace or production quotas such as would customarily be found on an assembly line" (Tr. 19, 50), which, as explained above, accounts for her moderate limitation in CPP. "Accordingly, the ALJ did not err by failing to explain how [Tamera L.-H.] possessed the ability to concentrate, persist, and maintain pace throughout an eight-hour workday with [less than a twenty] percent loss of productivity, because the ALJ did not make such a finding." *Brian S.*, 2021 WL 748087, at \*13.

Last, Tamera L.-H. argues that the ALJ improperly relied upon the VE's responses to the ALJ's hypothetical questions because an apparent conflict exists between the VE's testimony and the information contained in the *Dictionary of Occupational Titles* (the "DOT"), which was not resolved. ECF No. 15-1 at 9-14. According to Tamera L.-H., the ALJ "recognized that each of the occupations identified by the [VE] required a Reasoning level of 2, and thus conflicted with the limitations contained within the hypothetical question to the [VE], which limited [her] to the performance of simple 1-2 step, routine, repetitive tasks." *Id.* at 10. Tamera L.-H. thus contends that the Court should remand this case because the ALJ did not resolve the conflict between the VE's testimony and the information in the DOT. *Id.* at 13-14.

SSR 00-4p requires ALJs to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [VEs] and information in the [DOT]" and to "[e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704, at \*1 (Dec. 4, 2000). First, the ALJ must ask the VE about any possible conflicts with the information provided in the DOT and, if there appears to be a conflict, must "obtain a reasonable explanation for the apparent conflict." *Id.* at \*4. The ALJ must resolve any conflict "before relying on the [VE] evidence to support a determination or decision that the individual is or is not disabled." *Id.*

The ALJ has an independent obligation to identify any conflicts between the VE's testimony and the DOT, including "where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]." *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015). A VE's testimony that "apparently conflicts" with the DOT "can only provide substantial evidence" if the ALJ has received an explanation from the VE and concluded that the explanation is reasonable and "provides a basis for relying on the testimony rather than the [DOT]." *Id.* at 209-10 (citing SSR 00-4p, 2000 WL 1898704, at *2). "[A]n ALJ has not fulfilled his affirmative duty 'merely because the [VE] responds "yes" when asked if her testimony is consistent with the [DOT].'" *Id.* at 208-09 (quoting *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014)).

Here, the ALJ identified at the hearing a conflict between an individual's capacity to perform one- to two-step tasks and the jobs identified by the VE that, according to the DOT, involve level-two reasoning (namely, the "commonsense understanding to carry out detailed but uninvolved written or oral instructions"). Tr. 61-62. The VE explained that the term "detailed" was qualified by the terms "but uninvolved" and that in his opinion anyone capable of maintaining himself without assistance could perform these jobs. Tr. 26, 62-64. The ALJ found the VE's explanation to be reasonable and persuasive. Tr. 26. Although Tamera L.-H. now argues at length about the conflicts between the VE's testimony and the DOT regarding reasoning levels one and two (ECF No. 15-1 at 12-13), "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p, 2000 WL 1898704, at *2. Again, SSR 00-4p only requires the ALJ to obtain an explanation from the VE about apparent conflicts between the VE's testimony and the DOT and to conclude whether the explanation is reasonable and provides a basis for relying on the testimony instead. Because the ALJ here did so, Tamera L.-H.'s argument for remand on this basis is without merit. *See Michael H. v. Kijakazi*, Civil Action No. ADC-21-725, 2022 WL 170644, at *4 (D. Md. Jan. 18, 2022).[2]

In short, the Court's review is confined to whether substantial evidence supports the ALJ's decision and whether the correct legal standards were applied. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The Court is not permitted to reweigh the evidence, even if the Court believes the ALJ could have reached a different conclusion. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ's decision complies with the governing legal standards and is supported by substantial evidence. The Court thus affirms the Acting Commissioner's final decision.

---

[2] As the Acting Commissioner points out, the ALJ's misidentification of the DOT number for the occupation of housekeeper (Tr. 26, 50) is harmless error (ECF No. 16-1 at 8). *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (error that is inconsequential to ultimate nondisability determination is harmless).

For the reasons set forth above, Tamera L.-H.'s Motion for Summary Judgment (ECF No. 15) will be **DENIED**, and the Acting Commissioner's Motion for Summary Judgment (ECF No. 16) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                                  Sincerely yours,

                                                  /s/
                                                Timothy J. Sullivan
                                                United States Magistrate Judge